## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

MARY E. WILSON         )
                             )
        **Plaintiff,**      )
v.                        )       **Case No. CIV-06-270-SPS**
                             )
MICHAEL J. ASTRUE,     )
**Commissioner of the Social**   )
**Security Administration,**     )
                             )
        **Defendant.**     )

## OPINION AND ORDER

The claimant Mary E. Wilson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings by the ALJ.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A). Social security regulations implement a five-step

sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C.

§ 405(g). This Court's review is limited to two inquiries: first, whether the decision was

supported by substantial evidence; and, second, whether the correct legal standards were

applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The

term substantial evidence has been interpreted by the United States Supreme Court to require

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401

(1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court

may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v.*

*Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless,

the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must

---

[1]     Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 25, 1953, and was fifty-two (52) years old at the time of the administrative hearing. She has a limited eighth grade education and has completed some provider training. The claimant has previously worked as a daycare provider, home health aide, mental health aide, hospital cook and nursing housekeeper. She alleges she has been unable to work since September 19, 2003, due to depression, anxiety, and back pain.

## Procedural History

On September 19, 2003, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 34, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The applications were denied. ALJ Stephen C. Calvarese conducted a hearing and determined that the claimant was not disabled on January 26, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments of degenerative disc disease and depression (Tr. 16), but that she retained the physical residual functional capacity ("RFC") to perform light work with only occasional stooping, crouching, crawling, kneeling, or climbing (Tr. 18, 21). The

ALJ found that the claimant's mental restrictions were "marked limitation in the ability to understand, remember, and carry out detailed instructions and moderate limitation in the ability to relate to supervisors and co-workers." (Tr. 19). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform existing in significant numbers in the regional and national economies, *e. g.*, hand packager, laundry presser, mail clerk, and sewing machine operator (Tr. 20, 22).

Review

The claimant contends that the ALJ erred: (i) by finding she had the RFC to perform substantial gainful activity; and (ii) by improperly analyzing her credibility. As part of her first contention, the claimant argues that the ALJ did not adequately explain how he arrived at his mental RFC. The Court finds this argument persuasive.

The record reveals that the claimant underwent a mental status evaluation with psychologist Douglas Brown, Ph.D., in January 2004. She complained of depression and anxiety and reported decreased energy, fatigue, and weight gain. Upon examination, Dr. Brown found the claimant to be anxious. He noted no limitations in speech or language but that claimant was "very dependent" in her relationships. Dr. Brown found her to be "fairly good" in the area of concentration, persistence, and pace and estimated that her IQ was 80 or greater. The claimant performed some household chores, took care of her own personal needs and finances, and drove. Dr. Brown indicated there was "no evidence here of organic impairment of higher cortical functioning" and assessed the claimant with dysthymic

disorder, anxiety disorder (NOS), and histrionic personality disorder with dissociative features. He estimated the claimant's prognosis for the next twelve months was poor (Tr. 166-69).

In January 2004, psychologist Stephen Miller, Ph.D., reviewed the claimant's medical records and completed a Psychiatric Review Technique ("PRT") form based on affective disorders and anxiety-related disorders. He determined that the claimant had moderate degrees of limitation in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. There was insufficient evidence to demonstrate repeated episodes of decompensation of an extended duration (Tr. 172-77). Dr. Miller also completed a mental RFC assessment on which he concluded that the claimant was markedly limited in her ability to understand, remember and carry out detailed instructions and moderately limited in her ability to interact appropriately with the public. He summed up his conclusions by finding that "[c]laimant can understand, remember and carry out simple, but not detailed, instructions under routine supervision [and] can relate to the general public, co-workers and supervisors in an incidental fashion[.]" (Tr. 178-80).

The claimant was examined by psychologist Robert Spray, Jr., Ph.D., in September 2005. She complained of depression in addition to some physical ailments. She reported that her relationship with her family was good and that she had friends but did not see them often. In the past, she had good relations with co-workers and supervisors. The claimant reported days when "she [did] not want to get up." Dr. Spray noted no marked limitations with

concentration, persistence or pace during the evaluation. He administered the Wechsler Adult Intelligence Scale-III to the claimant, and her results indicated borderline intellectual functioning. Dr. Spray noted, however, that the results were not "clearly consistent" with the claimant's adaptive functioning. He also assessed the claimant with mild dysthymia (Tr. 205-11). Following his evaluation of the claimant, Dr. Spray completed a medical source statement and determined the claimant had slight limitations in understanding, remembering and carrying out short, simple instructions and moderate limitations in understanding, remembering and carrying out detailed instructions and in making judgments on simple work-related decisions. He further opined that the claimant had slight limitations in responding appropriately to the public, supervisors and co-workers and in adapting to work pressure and change (Tr. 212-14).

In accordance with the requirements of the special technique outlined in 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ determined that the claimant's "dysthymia and anxiety have resulted in a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace." (Tr. 19). *See Cruse v. Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). He also summarized the

assessments of Dr. Brown and Dr. Spray and noted Dr. Spray's findings of moderate mental limitations in understanding, remembering and carrying out detailed instructions and in making judgments on simple work-related decisions (Tr. 17).  The ALJ then concluded that the claimant had a mental RFC which included  "marked limitation in the ability to understand, remember, and carry out detailed instructions and moderate limitation in the ability to relate to supervisors and co-workers." (Tr. 19).  In another portion of his decision, the ALJ characterized the claimant's mental RFC as requiring no "understanding, remembering, and carrying out [of] detailed instructions; or more than minimal interaction with supervisors and co-workers[.]" (Tr. 21).

However, in assessing the claimant's mental RFC, the ALJ failed to analyze (or even mention) the functional assessment provided by agency psychologist Dr. Stephen Miller. *See, e. g., Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, *see* 20 C.F.R. §[§] 404.1527(d), [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  *See also* Soc. Sec. R. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be

considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)"). This is problematic for two reasons. First, the ALJ's hypothetical questions to the vocational expert suggest that Dr. Miller's opinions provided some support for the ALJ's mental RFC determination (Tr. 275-77). Second, there is no explanation for the apparent rejection of some of Dr. Miller's findings, *e. g.*, Dr. Miller opined on the PRT form that the claimant had a moderate degree of limitation in activities of daily living and he included a moderate limitation for relating to the public on his mental RFC assessment (Tr. 172-80). *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

Nor did the ALJ provide any explanation for omitting from the claimant's RFC a limitation as to the claimant's ability to make workplace judgments. The ALJ undoubtedly rejected Dr. Spray's opinion that the claimant had only moderate limitations in understanding, remembering, and carrying out detailed instructions, because he found instead that the claimant's limitations in this area were marked. But there is no similar explanation for the ALJ's apparent rejection of Dr. Spray's opinion that the claimant had a moderate limitation in her ability to make judgments on simple work-related decisions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence

supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Finally, the ALJ failed to make any specific reference in his written decision to the evidence on which the claimant's mental RFC determination was based. The Commissioner argues that the ALJ's decision *is* supported by evidence in the record, but this Court cannot provide a rationale for the ALJ's decision. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create . . . post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. This the ALJ must do himself.

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's mental RFC so the Court can assess "whether relevant evidence adequately supports the ALJ's conclusion." *Clifton*, 79 F.3d at 1009. If this analysis results in any adjustment to the claimant's RFC, the ALJ should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.

Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

      **DATED** this 28th day of March, 2008.

                              _____

                              **STEVEN P. SHREDER**
                              **UNITED STATES MAGISTRATE JUDGE**